UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASTRID HURTADO-ROMERO, <br>     Plaintiff, <br> v. <br> JEFF SESSIONS, et al., <br>     Defendants. | Case No. 18-cv-01685-EMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR HABEAS CORPUS** <br><br> Docket No. 1 |

Plaintiff Astrid Hurtado-Romero is an alien detained by Immigrations and Customs Enforcement ("ICE"), an agency of the United States Department of Homeland Security ("DHS"). She filed a habeas corpus petition against Defendants seeking immediate release or, alternatively, a bond hearing. The government filed a return in opposition; Plaintiff did not file a traverse. The matter came before the Court on May 10, 2018. Plaintiff's counsel failed to appear or notify the Court that he would be unable to appear. The hearing proceeded in the presence of Defendants' counsel. For the reasons below, the Court **GRANTS** Ms. Hurtado-Romero's petition to the extent she requests a bond hearing, but **DENIES** her request for immediate release.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Because Plaintiff did not file a traverse, the allegations in the Government's return brief "shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248. The Government submitted evidence to support the following:

- Around December 12, 2016, Ms. Hurtado-Romero was charged as inadmissible as an "alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i); *see also* Dutra Decl., Ex. A

1     (notice to appear).

- On May 9, 2017, an immigration judge ordered Ms. Hurtado-Romero to be removed to El Salvador after denying her petition for asylum and her requests for withholding of removal and deferral of removal. *See* Dutra Decl., Ex. B (IJ order). She was removed from the United States on or around May 26, 2017. *See* Dutra Decl., Ex. C.

- On November 10, 2017, Ms. Hurtado-Romero unlawfully re-entered the United States. *See* Dutra Decl., Ex. D. Immigration officers found that she was "removable as an alien who ha[d] illegally reentered the United States after having been previously removed," 8 U.S.C. § 1231(a)(5), and re-instated the December 2016 removal order. *Id.* After she expressed a fear of persecution or torture if returned to El Salvador, she was interviewed by an asylum officer who determined her fears were reasonable and referred the matter to an immigration judge for "withholding-only" proceedings. Dutra Decl., Ex. E.

When the habeas petition was filed, the withholding proceeding was still pending. Per updates filed by both parties, on April 23, 2018, an immigration officer convened a hearing and denied Ms. Hurtado-Romero's request for withholding of removal to El Salvador. *See* Docket Nos. 11, 12. Plaintiff intends to appeal to the Board of Immigration Appeals ("BIA"); according to Defendants, she had 30 days to do so from April 23. *See* Docket No. 11.

Ms. Hurtado-Romero has been in custody since November 10, 2017, six months as of the date of this hearing (May 10, 2018).

## II.    <u>DISCUSSION</u>

Although Plaintiff styled her complaint as challenging prolonged detention under 8 U.S.C. § 1226 (governing mandatory detention before entry of a final removal order), she is actually detained pursuant to 8 U.S.C. § 1231(a)(6) (governing discretionary detention after a final removal order), as the Government concedes. The Ninth Circuit held in *Padilla-Ramirez v. Bible*, 882 F.3d 826 (9th Cir. 2017), that an alien detained after the reinstatement of a final removal order, even though requesting withholding of removal, is held pursuant to § 1231(a)(6).

Section 1231(a)(6) provides that "[a]n alien ordered removed who is inadmissible under section 1182 of this title . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, *may* be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. Section 1231(a)(6) (emphasis added).

A. <u>Plaintiff is entitled to a bond hearing.</u>

In *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011), the Ninth Circuit construed Section 1231(a)(6) to require the government to provide detainees with a bond hearing after six months of detention. The Government concedes that if *Diouf* remains good law, then it governs this case and Plaintiff is entitled to a bond hearing. However, the Government argues that *Diouf*'s application of the constitutional avoidance doctrine in construing Section 1231(a)(6) has been effectively overruled by the Supreme Court's decision in *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018) (reversing the Ninth Circuit's holding construing 8 U.S.C. §§ 1225(b) and 1226(c) to require bond hearings as a misapplication of the doctrine of constitutional avoidance, and remanding to consider whether the due process clause requires such hearings). To find *Diouf* has been overruled and is no longer controlling, the Court must find that *Jennings* "is clearly irreconcilable with [it]." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). This is a "high standard." *United States v. Robertson*, 875 F.3d 1281, 1291 (9th Cir. 2017). "So long as the [district] court can apply [Ninth Circuit] precedent without running afoul of the intervening authority it must do so. It is not enough for there to be some tension between the intervening authority and prior circuit precedent, or for the intervening authority to cast doubt on the prior circuit precedent." *Id.*

*Jennings* and *Diouf* are not "clearly irreconcilable," even if there may be "some tension" between them. *Id.* In *Jennings*, the Supreme Court explained that the canon of constitutional avoidance "comes into play only when, after the application of ordinary textual analysis, the statute is found to be susceptible of more than one construction." 138 S.Ct. at 842 (citations and quotations omitted). It reversed the Ninth Circuit because 8 U.S.C. Section 1226(c), which provides that the government "*shall* take into custody any alien who" has been deemed inadmissible based on a criminal offense, unambiguously mandated such detention. Because

3

detention under Section 1226(c) was not discretionary, there was no ambiguity as to how long the statute authorized detention. The Supreme Court explicitly contrasted Section 1226 from the statute at issue in this case, Section 1231(a)(6), explaining:

> Moreover, in *Zadyvdas* [*v. Davis*, 533 U.S. 678, 701 (2001)], the Court saw ambiguity in § 1231(a)(6)'s use of the word 'may.' Here, by contrast, [the statutes] do not use the word 'may.' Instead, they unequivocally mandate that aliens falling within their scope 'shall' be detained. . . . That requirement of detention precludes a court from finding ambiguity here in the way that *Zadvydas* found ambiguity in § 1231(a)(6).

*Id.* at 844. Thus, in effect, *Jennings* re-affirmed that the constitutional avoidance doctrine may properly be applied to Section 1231(a)(6).

The Government argues that although Section 1231(a)(6) is ambiguous with respect to whether detention is discretionary or mandatory, the statute is not ambiguous with respect to whether a bond hearing is required. *Cf. Jennings*, 138 S.Ct. at 842 (pointing out that "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings"). Though the statute does not explicitly refer to a hearing, that silence is not enough to render *Jennings* "clearly irreconcilable" with *Diouf*. Statutory silence about bond hearings was not dispositive in *Jennings*. It was secondary to the fact that Sections 1225 and 1226 use the word "shall" (thus making detention mandatory before a final removal decision has been made). In addition, the statute's silence was considered alongside other factors. For example, the Supreme Court reasoned that the statute's express exemption for detention under Section 1225(b) (which governs the detention of certain applicants for admission pending review of a claim of persecution and until removal) "for urgent humanitarian reasons or significant public benefit" "implie[d] that there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 844.

Those additional factors negating ambiguity are not present here. Not only does Section 1231(a)(6)'s use of the word "may" introduce ambiguity, that section also provides that aliens "who [have] been determined by the Attorney General *to be a risk to the community or unlikely to comply with the order of removal*, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6) (emphasis added). That language echoes the traditional bond standard.

4

Moreover, if the Government's argument were correct, then it is unclear how *Jennings* and *Zadvydas* could be reconciled. *Zadvydas* implied a presumptive 6-month limitation on detention pursuant to Section 1231(a)(6) even though the statute makes no reference to 6 months or any other duration. *Zadvydas* also construed Section 1231(a)(6) to permit detention only so long as removal is "reasonably foreseeable," even though the statute sets no such explicit limit. There is no more tension between *Jennings* and *Diouf* than between *Jennings* and *Zadvydas*.

Several district courts in this circuit have concluded that *Diouf* is not "clearly irreconcilable" with *Jennings* and thus remains binding. *See Ramos v. Sessions*, No. 3:18-cv-0413-JST, 2018 WL 1317276, at \*3 (N.D. Cal. Mar. 13, 2018) (explaining that "at a minimum . . . *Jennings* left for another day the question of bond hearing eligibility under section 1231(a)(6), and at best that the Ninth Circuit correctly invokes the doctrine of constitutional avoidance in such a situation"); *Mercado-Guillen v. Nielsen*, Case No. 18-cv-0727-HSG, 2018 WL 1876916, at \*3 (N.D. Cal. Apr. 19, 2018); *Cortez v. Sessions*, Case No. 18-cv-01014-DMR, 2018 WL 1510187, at \*7-8 (N.D. Cal. Mar. 27, 2018); *see also Baños v. Asher*, Case No. C16-1454JLR, 2018 WL 1617706, at \*2 (W.D. Wash. Apr. 4, 2018); *Borjas-Calix v. Sessions*, 2018 WL 1428154, at \*4-6 (D. Ariz. Mar. 22, 2018). The Government did not identify any case decided differently. Until and unless the Ninth Circuit holds otherwise, *Diouf* continues to bind this Court.

Because the Government concedes that *Diouf* applies to this case if it has not been overruled,[1] and because *Jennings* and *Diouf* are not "clearly irreconcilable" even if there may be

---

[1] Though the Government concedes *Diouf*'s applicability to this case, it suggested that an individual's due process interest during withholding proceedings may differ qualitatively from that at issue in *Zadvydas* pending the effectuation of removal because a withholding proceeding will, at some point, end. Though that may be the case, it does not follow that detention pending withholding is always so short that it does not implicate a protected liberty interest. Indeed, in *Diouf*, the alien had been in detention for nearly *five years* pursuant to Section 1231(a)(6) pending judicial review of the Government's final removal decision. *See* 634 F.3d at 1083. Thus, even when judicial review of a removal or withholding decision (rather than the practical unforeseeability of removal) is the reason for the delay, detention may still be prolonged because of the possibility of multiple rounds of appeal, review, and remand. Due process liberty interests may be implicated. Under traditional due process principles, that individual liberty interest must be balanced against the government's interests. *See Mathews v. Eldridge*, 424 U.S. 893, 334-35 (1976). Here, Section 1231(a)(6) envisions that the Government's interest in removal will not be unduly jeopardized because presumably Plaintiff will be released on bond only if she is not "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6).

5

some tension between them, the Court must follow *Diouf*. As of May 10, Plaintiff has been in detention for longer than 6 months, so she is entitled to a bond hearing.

B. <u>Plaintiff is not entitled to immediate release.</u>

Plaintiff also petitions for immediate release because she has been detained longer than six months. In *Zadvydas*, the Supreme Court construed Section 1236(a)(6) to "limit[] an alien's post-removal period detention to a period reasonably necessary to bring about that alien's removal from the United States." 533 U.S. at 689. Thus, "[i]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 700.

In the typical *Zadvydas* case, the government is unable to remove the alien because the country of removal refuses to accept them or to provide travel documents. That is not the case here. Plaintiff has not attempted to rebut the government's contention that it regularly effectuates removal to El Salvador. *See* Opp. at 8 (citing ICE report showing that 20,538 individuals were removed to El Salvador in FY2016). Indeed, she was removed there in 2016. In light of the Government's uncontested assertion that removal is feasible, the sole obstacle to removal appears to be the pending appeal of the adverse withholding decision. That alone does not render removal unforeseeable under *Zadvydas*. *See Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (holding that Mexican national "faces a significant likelihood of removal in the reasonably foreseeable future because the government can repatriate him to Mexico if his pending bid for judicial relief from his administrative final removal order proves unsuccessful"). Accordingly, on this record Plaintiff's request for immediate release is denied.

### III. CONCLUSION

Defendants must provide Ms. Hurtado-Romero with a hearing within 30 days before an Immigration Judge with the power to release her on bond unless the government establishes that she is "a risk to the community or unlikely to comply with the order of removal." 8 U.S.C. § 1231(a)(6). Ms. Hurtado-Romero's request for immediate release is **DENIED**.

//

//

//

The Clerk of the Court is directed to enter judgment for Plaintiff and to close the case.

**IT IS SO ORDERED**.

Dated: May 16, 2018

EDWARD M. CHEN
United States District Judge